UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HERMAN MILLER INC. RETIREMENT
INCOME PLAN,

        Plaintiff,

  v.

RAQUEL S. MAGALLON, also
known as RAQUEL S. MORA,
an individual and ANA C.
GOMEZ, also known as ANA
MAGALLON, an individual,

        Defendants.

No. 2:07-cv-00162-MCE-GGH

**MEMORANDUM AND ORDER**

----oo0oo----

Defendant Raquel Magallon ("Raquel") claims to be the spouse of the decedent, Juan Magallon ("Decedent"). As such, Raquel received payments from the Benefit Plan that the decedent had through his employer, Herman Miller, Inc. ("HMI"). Defendant Ana Gomez ("Ana") later asserted that she was the surviving spouse. As a consequence, HMI filed an immediate interpleader action and was discharged on July 2, 2008.

///

1

This Court has federal question jurisdiction over this matter under 29 U.S.C. § 1132 in it concerns the Employment Retirement Income Security Act. The Court must now decide who is entitled to the Herman Miller retirement benefits at issue.

**BACKGROUND**

Decedent was an employee of HMI. During Magallon's employment, HMI had a plan which afforded retirement benefits coverage to certain eligible employees, including the decedent ("Benefit Plan"). On April 11, 2000, Decedent executed a Beneficiary Designation naming Raquel S. Magallon, identified therein as the decedent's spouse, as the beneficiary. At the June 24, 2010 OSC hearing, Raquel furnished a Mexican Civil Registration document indicating that she and the decedent were officially wed on December 30, 1996. Decedent passed on January 27, 2005. Raquel was identified as the decedent's surviving spouse on the Certificate of Death. Payments in the amount of $122.47 were made to Raquel pursuant to the decedent's Beneficiary Designation and her status as the surviving spouse.

Ana C. Gomez later alleged that she, not Raquel, is entitled to the full amount of the Benefit Plan. Defendant Gomez produced a Record of Church Marriage indicating that she and the Decedent were married on July 24, 1976 (Exh. C to Compl.). Additionally, Gomez provided an Amended Certificate of Death naming Ana Corina Gomez as the decedent's surviving spouse (Exh. D).

///
///

2

Due to the conflicting claims, and HMI's uncertainty as to which defendant is entitled to be paid the Benefit Plan, it suspended payment to Raquel on August 1, 2006 and filed the instant interpleader action. HMI was discharged on July 2, 2008 leaving the Court to decide the entitlement issue.

Attorney Merlyn Hernandez filed an Answer and a cross-claim against Raquel on behalf of Ana on April 6, 2010. At the May 13, 2010 hearing, which was continued, Raquel appeared with a non-attorney to assist with translation. To date, no formal appearance has been made on Raquel's behalf despite an April 29, 2010 letter from California Rural Legal Assistance Foundation asking that she be afforded additional time to locate representation. At the time of the most recent June 24, 2010 hearing, Raquel indicated that she had not retained an attorney and did not state she had any intention of doing so.

**STANDARD**

California statutes explicitly declare a bigamous relationship void from its inception. Cal. Family Code § 2201(a) (2009). The legislature defined such a relationship as the "subsequent marriage contracted by a person during the life of a former husband or wife of the person, with a person other than the former husband or wife." Id.

///
///
///
///

1    The statute further establishes that the subsequent marriage
2 is illegal and void from the beginning, unless: (1) the former
3 marriage has been dissolved or adjudged a nullity *before the date*
4 of the subsequent marriage; (2) the former husband or wife (i) is
5 absent, and not known to the person to be living for the period
6 of five successive years immediately preceding the subsequent
7 marriage, or (ii) is generally reputed or believed by the person
8 to be dead at the time of the subsequent marriage was contracted.
9 Id.
10    In its analysis of Section 2201, the Court of Appeals, in In
11 re Marriage of Tejada, 179 Cal. App. 4th 973 (6th Dist. 2009),
12 held that bigamy renders the subsequent marriage either void or
13 voidable, depending on the circumstances.  As the Tejada court
14 noted, one may never legally remarry "prior to dissolution of his
15 or her existing marriage."  Id. at 980 (citing In re Marriage of
16 Campbell, 136 Cal. App. 4th 502 (2006)).  Moreover, if proceeding
17 with a marriage under a scenario expounded in subsection (ii)
18 above, the spouse entering a subsequent marriage must have a *good*
19 *faith* belief in the prior spouse's death.  See, e.g., People v.
20 Vogel, 46 Cal. 2d 798, 802-03 (1956). If this is the case, then
21 the subsequent marriage is deemed valid until its nullity is
22 adjudged according to statute.  See Cal. Family Code §§ 2201,
23 2010. California statutory law further establishes that a
24 marriage is a contractual relationship which may only be
25 terminated in three ways: (1) the death of one of the parties;
26 (2) a judgment of dissolution of marriage; and (3) a judgment of
27 nullity.  Cal. Family Code § 301.
28 ///

4

The California legislature has also declared that "a marriage contracted outside this state that would be valid by the laws of the jurisdiction in which the marriage was contracted is valid in [California]." Cal. Family Code § 308(a). The California Attorney General offered analysis on this particulary statutory provision, stating that "[w]here applicants for a marriage license are already validly married in another state or in a foreign country, it is neither necessary nor proper for the county clerk to issue a marriage license to enable the parties to remarry." 3 Op. Atty. Gen. 86 (1944).

## ANALYSIS

Under the legal standard articulated above, Raquel's claim to the Benefit Plan cannot prevail because the evidence currently before the Court indicates that her marriage to the decedent was void from its inception and a violation of California's bigamy statutes. Decedent's marriage to Ana is still in effect because there has been no showing that there has been a judgment of dissolution of marriage or a judgment of nullity according to California Family Code § 301. Case law reaffirms the explicit statutory language in concluding that one may *never* legally marry prior to dissolution of his or her existing marriage. In re Marriage of Tejada, supra. Although certain exceptions exist if the remarrying spouse believes that his or her prior spouse has died, in this case we have absolutely no evidence that was the case.
///

5

1    Consequently the Court determines that given the evidence
2 before it, Ana is entitled to the Herman Miller retirement
3 benefits at issue.
4    The only recourse that Raquel has at this point is to
5 furnish documentation showing that Juan Magallon's first marriage
6 to Defendant Ana Gomez was dissolved or annulled prior to the
7 date Juan married Raquel.  Cal. Family Code § 2201(a).

## CONCLUSION

11    As set forth above, the Court finds that the available
12 evidence shows that Ana is entitled to the Herman Miller benefits
13 in question.  The Court will stay its Order for a period of
14 thirty (30) days, however, in order to give Raquel a final
15 opportunity to produce documentation indicating that Juan
16 Magallon's 1976 marriage to Ana had in fact been dissolved or
17 annulled before Juan married Raquel in 1996.  If no such evidence
18 is presented, the Court will issue judgment in favor of Ana Gomez
19 once said thirty (30) day period expires, without further notice
20 from the Court.
21    IT IS SO ORDERED.
22  Dated: July 23, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

6